Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




## MEMORANDUM OPINION

No. 04-12-00067-CV

**IN THE INTEREST OF S.J.S.**, A Child

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-PA-01703
Honorable Dick Alcala, Judge Presiding[1]

Opinion by:    Marialyn Barnard, Justice

Sitting:    Karen Angelini, Justice
Phylis J. Speedlin, Justice
Marialyn Barnard, Justice

Delivered and Filed:  June 27, 2012

AFFIRMED

Appellant R.S. appeals the trial court's judgment terminating her parental rights to her child, S.J.S.  Appellant contends the evidence is factually insufficient to establish the Texas Department of Family and Protective Services ("the Department") made reasonable efforts to return S.J.S. to appellant.[2]  We affirm.

---

[1] The Honorable Janet Littlejohn is the presiding judge of the 150th Judicial District Court of Bexar County. However, the termination order was signed by the Honorable Dick Alcala, who is a senior district judge sitting by assignment in the 150th Judicial District Court.

[2] In her brief, appellant recites the standard of review for both factual and legal sufficiency.  However, in stating her issues, appellant twice states she is challenging the factual sufficiency of the evidence and from her argument it appears her complaint is limited to a factual sufficiency challenge.

**BACKGROUND**

Appellant has been diagnosed with several mental health disorders and in the past exhibited violent, aggressive behavior toward others after the birth of her first child, M.J.S. She was noted to have been neglectful toward M.J.S. and was found to have physically abused other children. Ultimately, her parental rights to M.J.S. were terminated.

S.J.S. was born on July 29, 2010. The day after his birth, the Department received a "priority one referral" alleging appellant had tested positive for benzodiazepines and opiates. Although previously diagnosed with schizoid affective disorder with psychotic episodes as well as bipolar disorder, appellant was not taking any prescribed medications at the time of the birth of S.J.S. Despite the positive drug test, appellant denied using any drugs. Because of appellant's mental illness, previous history, current drug test results, and her financial inability to care for S.J.S., the Department immediately removed S.J.S. from appellant the day after his birth. Eight days later, the Department filed its petition for protection, conservatorship, and termination.

In its petition, the Department sought termination in the event reunification was not possible. Among the grounds stated in the petition, the Department alleged termination was appropriate because it was in the best interest of the child and appellant "has a mental or emotional illness or a mental deficiency that renders [her] unable to provide for the physical, emotional, and mental needs of [S.J.S.] and will continue to render [her] unable to provide for [S.J.S.'s] needs until the eighteenth birthday of [S.J.S.]." *See* TEX. FAM. CODE ANN. § 161.003(a) (West 2008). The trial court awarded temporary custody of S.J.S to the Department.

In December 2011, a bench trial was held regarding the Department's request for termination of appellant's parental rights to S.J.S. After considering the evidence, the trial court

signed a judgment terminating appellant's rights to S.J.S. The trial court found: (1) termination was in the best interest of the child, (2) appellant has a mental or emotional illness or a mental deficiency that renders her unable to provide for S.J.S.'s physical, emotional, and mental needs, (3) the illness or deficiency would in all probability continue until S.J.S.'s eighteenth birthday, (4) the Department had been the temporary conservator of S.J.S. for at least six months, (5) and the Department had made reasonable efforts to return S.J.S. to appellant. *See id.* After the trial court signed the judgment of termination, appellant was appointed appellate counsel who perfected this appeal.

## ANALYSIS

A parent's rights to a child may be terminated only upon proof by clear and convincing evidence that the parent: (1) has committed an act prohibited by section 161.001(1) of the Texas Family Code ("the Code"), or has a mental or emotional illness or mental deficiency as described in section 161.003(a) of the Code; and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. §§ 161.001, 161.003(a) (West 2008 & Supp. 2011); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (holding proceedings to terminate parental rights under Code require proof by clear and convincing evidence); *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980) (adopting clear and convincing standard of proof for sufficiency review in termination of parental rights cases). Clear and convincing evidence is proof that will produce a firm belief or conviction in the mind of the fact finder that the allegations sought to be established are true. TEX. FAM. CODE ANN. § 101.007 (West 2008).

### *Standard of Review*

When we review whether the evidence is factually sufficient to support a challenged finding in a termination case–here, whether the Department made reasonable efforts to return

S.J.S. to appellant–we must consider, in light of the entire record, the evidence a trier of fact could reasonably have found to be clear and convincing and determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department's] allegations." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)).  In reviewing termination findings for factual sufficiency, we must give due deference to the trier of fact's findings and must not supplant its judgment with our own. *In re H.R.M.*, 2009 S.W.3d 105, 108 (Tex. 2006).  "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266.

### *Application*

Appellant's rights were terminated under section 161.003(a) of the Code.  That section permits a court to order termination of the parent child relationship if the court finds:

- the parent has a mental or emotional illness or a mental deficiency that renders the parent unable to provide for the physical, emotional, and mental needs of the child;

- the illness or deficiency, in all reasonable probability, proved by clear and convincing evidence, will continue to render the parent unable to provide for the child's needs until the 18th birthday of the child;

- the department has been the temporary or sole managing conservator of the child of the parent for at least six months preceding the date of the hearing on the termination held in accordance with subsection (c);

- the department has made reasonable effort to return the child to the parent; and

- the termination is in the best interest of the child.

TEX. FAM. CODE ANN. § 161.003(a).  The trial court found all the factors stated in section 161.003(a).  In her single issue, appellant contends the evidence is factually insufficient to

support the trial court's finding that the Department made reasonable efforts to return S.J.S. to her. Appellant does not challenge the sufficiency of the evidence to support the trial court's findings as to the other factors stated in section 161.003(a).

Appellant contends that because the Department proffered testimony from only one witness associated with Child Protective Services, Nicole Curel, we have only this testimony to determine if there is sufficient evidence that the Department made reasonable efforts to reunify S.J.S and appellant. Appellant further contends that the testimony of one of the Department's experts, psychologist Russel Thompson, provides the only basis for the court to determine what efforts might be deemed "reasonable" in this case. As we discuss below, we disagree that Curel's testimony is the only evidence before the court that would permit the court to find the Department made reasonable efforts to reunite S.J.S. and appellant, and we further disagree that Dr. Thompson's testimony provides the standard for what constitutes a reasonable effort.

A family service plan is designed to reunify a parent with a child who has been removed by the Department. *Liu v. Tex. Dep't of Family & Protective Servs.*, 273 S.W.3d 785 795 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Therefore, "[i]mplementation of a family service plan by the Department is ordinarily considered a reasonable effort to return a child to its parent." *In re N.R.T.*, 338 S.W.3d 667, 674 (Tex. App.—Amarillo 2011, no pet.); *see also In re M.R.J.M.*, 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.).

Here, the Department formulated a family service plan for appellant. In a status hearing order, the trial court specifically stated it had reviewed the plan and further found appellant had reviewed and understood the family service plan. The court also incorporated the plan into its order. The plan described the goals appellant would have to achieve in order to be reunified with S.J.S. The goals included:

- Showing an ability to protect and parent S.J.S.;

- Demonstrating an ability to provide appropriate caregivers for S.J.S. in her absence;

- Addressing her own mental health needs;

- Demonstrating an ability to control her anger and express it in ways that do not hurt S.J.S. or others;

- Demonstrating an ability to provide basic needs for S.J.S. such as food, clothing, shelter, medical care, and supervision;

- Building a support network to help ensure the safety of S.J.S.;

- Maintaining housing that is safe and free of hazards; and

- Demonstrating an ability to change the pattern of behavior that resulted in the Department's intervention.

The Department's progress reports, which are part of the clerk's record, as well as testimony, established appellant completed several tasks required by the plan and the Department, and was making progress with her parenting. However, the record also contains evidence that appellant continued to be hospitalized several times a month for medical issues, to display aggressive behaviors, and to go against doctor's orders. Progress reports also stated the Department had been working with appellant for several months and there was no progress made in alleviating the issues that brought S.J.S. into the Department's care initially.

Subsequent progress reports noted appellant's failures to comply with the family service plan. More specifically, she failed to provide the names of individuals who could serve as a support system. Although she provided the names of eight individuals, all but one had a history with the Department or Adult Protective Services. The few individuals the caseworker was able to reach had been told by appellant the Department was involved because she was wheel-chair

bound, not because her mental illness prevented her from caring for her child. Only one individual seemed willing to help, but she had significant problems with the Department.

The progress reports also noted appellant's refusal to stop smoking contrary to physician's orders and despite diagnoses of asthma and chronic pulmonary obstructive disorder ("COPD"). Appellant continued to require hospitalization and refused to listen to or comply with hospital discharge orders. She ultimately cancelled twelve visits with S.J.S. Appellant's own therapist described her behavior as "childlike," first ranting and yelling, then wanting to play games.

Subsequent progress reports further established appellant's failure to achieve the reunification goals set forth in the service plan. Although appellant continued her mental health counseling, her therapist reported appellant's attendance was inconsistent. The therapist expressed deep concerns to appellant about her decision to continue smoking, despite hospitalizations for pneumonia and a collapsed lung. Appellant's continued, frequent hospitalizations forced her to cancel visits with S.J.S. Appellant also advised a caseworker she was currently homeless because she was evicted after moving into a larger apartment. She went to live at Haven for Hope, but left for a hotel room allegedly paid for, in part, by her therapist. Appellant advised she had no money and had not eaten in days despite the fact appellant was receiving food stamps and other assistance. She ultimately found a new home after her landlord was forced to refund her down payment.

Evidence in the record also showed the Department attempted to conduct a home study for purposes of placing S.J.S. with a couple who were friends with appellant. However, when contacted by a Department worker, the wife explained she had told appellant that it was unlikely

she would accept placement of S.J.S as her husband was being transferred out of state. The wife later confirmed she did not want to be studied as a possible placement for S.J.S.

There was also testimony about appellant's failures to reach the goals required for reunification. Curel, appellant's caseworker, testified appellant had been hospitalized dozens of times, which prompted the reunification goal that appellant provide a support network to care for S.J.S. on those occasions when she was hospitalized. As noted in the progress reports, and as testified to by Curel, appellant failed to provide appropriate or useful information about such a support network. Instead, appellant provided names of individuals who had known appellant for a short period of time–some she had met at a bus stop–and seemed to have no knowledge of her mental problems.

As to addressing her mental health issues, Curel testified appellant was on medication for her physical and mental well-being, but would often fail to take it. When Curel would visit, appellant was unable to find her medication, leaving Curel to believe that she would not have even bothered with it but for Curel's prompting.

Appellant also failed to control her anger or find ways to express anger appropriately, despite therapy and classes. Curel testified there were numerous incidents of appellant's angry, uncontrolled behavior, including at least one incident while appellant was holding S.J.S. during visitation. Such incidents happened on a VIA transport vehicle, when appellant refused to exit the vehicle, at the NICU of the hospital where S.J.S. was being treated, and in interactions with doctors and other professionals attempting to help appellant.

As the Austin Court of Appeals found in *Rodriguez v. Tex. Dep't of Family & Protective Servs.*, when the Department makes efforts to provide a parent with training, classes, assistance with her medical or mental needs, and information to address those needs, the Department has

made reasonable efforts at reunification even if the parent fails to make significant improvement with regard to the goals of reunification. No. 03-05-00321-CV, 2006 WL 1358488, *7 (Tex. App.—Austin May 19, 2006, no pet.) (mem. op.). Here, appellant was directed to classes, which she completed, directed to services to assist her, and was under the care of a licensed therapist. Curel, her caseworker, attempted to have appellant set up an appropriate support system so that reunification might be achieved, yet appellant was unable to provide even one individual who might fill that role. The individuals named by appellant were investigated and found unsatisfactory by the Department. Curel visited appellant in her various homes, explaining to appellant the need to make the home safe for S.J.S. Yet, the evidence shows appellant was at times homeless and without food, despite the provision of public assistance.

After considering all the evidence, including the implementation of the family service plan, we hold the evidence is such that the trial court could have reasonably formed a firm belief or conviction that the Department made reasonable efforts to return S.J.S. to appellant. *See In re J.F.C.*, 96 S.W.3d at 266. The evidence simply shows those efforts were unsuccessful, due in great part to appellant's failures to deal with her physical and mental conditions.

Appellant seems to argue we cannot consider the implementation of a family service plan in this case as evidence because the plan "was never admitted into evidence." Appellant is incorrect. The family service plan appears in the clerk's record. The trial court's failure to affirmatively state on the record that it was taking judicial notice of the documents in the court's file, which included the plan and the Department's progress reports, is not dispositive. This court and at least one other court have held the trial court may be presumed to have taken judicial notice of the records in the court's file without any request being made and without an announcement that it has done so. *In re A.X.A.*, No. 04-09-00519-CV, 2009 WL 5150068, at *4

n. 3 (Tex. App.—San Antonio Dec. 30, 2009, no pet.) (mem. op.) (citing *Marble Slab Creamery, Inc. v. Wesic, Inc.*, 823 S.W.2d 436, 439 (Tex. App.—Houston [14th Dist.] 1992, no pet.) (presuming trial court took judicial notice of family service plan and order adopting plan; both documents in clerk's record)); *In re A.W.B.*, 14-11-00926-CV, 2012 WL 1048640, at *3 (Tex. App.—Houston [14th Dist.] Mar. 27, 2012, no pet.). As stated by the Fourteenth Court of Appeals, a "trial court is presumed to judicially know what has previously taken place in the case tried before it, and the parties are not required to prove facts that a trial court judicially knows." *In re J.J.C.*, 302 S.W.3d 436, 446 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (internal quotations and citation omitted). Accordingly, the trial court could consider the family service plan as evidence, and as noted above, "[i]mplementation of a family service plan by the Department is ordinarily considered a reasonable effort to return a child to its parent." *In re N.R.T.*, 338 S.W.3d at 674; *see also In re M.R.J.M.*, 280 S.W.3d at 505.

## CONCLUSION

Based on the foregoing, we overrule appellant's issue and affirm the trial court's judgment.

Marialyn Barnard, Justice